UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DEMETRIUS BLACKWELL-ESTERS and
TYRESE JACKSON,

          Plaintiffs,         Case No.

v.         Hon.

KAYLA ROE, LAMONT NELSON,
ALEJANDRO VELA M. MILLER,
AHMED HAIDAR, J. REYNOSO, D. KLINE,
B. ATKINSON, J. SAYLES, A. WILLIAMS,
R. DYAS, D. CROSS, SUHR, JOHN DOE and
JOHN ROE in their individual and official capacities,
CITY OF DETROIT, a municipality,
Jointly and Severally,

          Defendants.
_____/

DAVID A. ROBINSON (P38754)
BRANDON MCNEAL (P81000)
ROBINSON & ASSOCIATES, P.C.
Attorneys for Plaintiff
28145 Greenfield Rd., Suite 100
Southfield, MI 48076
(248) 423-7234
davidrobinsonlaw@gmail.com

THOMAS E. KUHN (P37924)
Thomas E. Kuhn, P.C.
Co-Counsel for Plaintiff
645 Griswold, Ste. 1900
Detroit, MI   48226
(313) 963-5222/
tekuhn@aol.com
_____/

## **COMPLAINT and JURY DEMAND**

There is pending a companion case before the Honorable
Bernard A. Friedman case No. 21-11578

1

NOW COME Plaintiffs, by and through their attorneys, and for their Complaint against the Defendants state as follows:

## PARTIES

1. At all pertinent times, Plaintiffs were residents of Wayne County, and citizens of the State of Michigan.

2. P.O. Kayla Roe, P.O. Lamont Nelson, Sgt. Ahmed Haidar badge No. S-22, P.O. M. Miller badge No. 2714, P.O. J. Reynoso badge No. 4549, P.O. D. Kline badge No. 160, P.O. B. Atkinson badge No. 3931, P.O. J. Sayles badge No. 2524, P.O. A. Williams badge No. 22, P.O. R. Dyas badge No. 3522, P.O. D. Cross badge No. 4580, P.O. Suhr, P.O. John Doe, P.O. John Roe [hereinafter Individual Defendants] were citizens of the State of Michigan, and at all pertinent times worked and were employed by the City of Detroit in Wayne County.

3. Defendant City is a municipal corporation located in Wayne County, Michigan and operates subject to the laws and constitutions of both the State of Michigan and the United States of America.

## JURISDICTION AND VENUE

4. Individual Defendants were at all pertinent times employed as a police officers and were at all pertinent times, acting under state law and pursuant to customs, policies and practices of Defendant City of Detroit.

5. Plaintiff brings this action under the laws of the State of Michigan, the

United States Constitution, and 42 U.S.C. § 1983.

6. Venue is appropriate because the events giving rise to this action occurred entirely in Wayne County, Michigan.

7. The amount in controversy in this action exceeds Seventy-Five Thousand Dollars ($75,000) and is otherwise within this Court's subject matter jurisdiction.

## FACTUAL ALLEGATIONS
### Plaintiffs Demetrius Blackwell and Tyrese Jackson

8. Plaintiff Demetrius Blackwell was born January 17, 2000. Plaintiff Tyrese Jackson was born January 26, 2000.

9. At the time of the incident Blackwell lived with his mother, Shevonne Blackwell and his sister, Demika Blackwell in the City of Detroit. Tyrese, a lifelong friend of Demetrius, at the time lived in a different area of the city.

10. Blackwell's address is within the boundaries of the 12th Precinct, the Precinct where the defendants work and are assigned as undercover cops.

11. Neither Demetrius Blackwell or Tyrese Jackson were ever involved in the shooting, but were accused by Haidar, through through Haidar's campaign of terror against them, because of citizen complaints the family made against him to the DPD for his history of abuse inflicted upon them.

12. In 2016, Defendants Haidar, Suhr and Reynoso embarked on a campaign of harassment and terror on the Blackwell family. The complained of acts included illegal raids on their home, kidnapping, physical and verbal assaults, illegal arrests

3

and detentions and destruction of property and evidence the Blackwells recorded of their wrongdoings.

13. The Blackwells collectively and individually made numerous citizen complaints to DPD Officer of the Chief Investigator against these officers. It is believed Defendants' motivation for harassing the Blackwells was retribution for the citizen's complaints made against them.

14. Despite clear and convincing proof of wrongdoing, none of the Blackwells' complaints was ever sustained against any of the cops.

## BACKGROUND ALLEGATIONS IN THE
## SHOOTING INCIDENT

15. On August 7, 2018, there was a shooting incident on Prairie and Florence Streets in Detroit where a driver in a Chrysler 300 (a Diamond Walton) and a passenger (Diamond's boyfriend, Benson Harris), and a passenger named "Ken" claimed their vehicle were shot at.

16. Diamond Walton was allegedly taken by a random good Samaritan to Sinai Grace hospital as she had a bullet wound in her leg.

17. Harris's cousin (who happened to be driving by) took him to Sinai Grace hospital to check on Diamond.

18. Within a short time of her arrival at the hospital, P.O. Kayla Roe, P.O. John Doe, and P.O. Lamont Nelson also arrived at the hospital.

19. P.O. Kayla Roe and/or P.O. Doe and/or P.O. Lamont Nelson met with

4

Diamond Walton at Sinai-Grace Hospital.

20. On August 9, 2019, Defendants executed a search warrant at Plaintiff Demetrius Blackwell's home.

21. On that day Blackwell and Jackson were together at Blackwell's house.

22. On that same day, Blackwell and Jackson were placed under arrest for the shooting.

23. The search of Blackwell's home recovered no items connecting either Blackwell or Jackson to the shooting.

24. The vehicle that was shot at was driven by a Diamond Walton, with Benson Harris and an unknown individual named Ken as passengers.

25. On the day of the shooting Diamond Walton reported to Roe there were only two shooters.

26. Diamond and Benson were presented with a "6 pack" line-up of photos presented by the police and identified Blackwell and Jackson as the shooters.

27. Demetrius Blackwell and Tyrese Jackson were charged with various charges involving a weapon, and a jury trial ensued in front of Wayne County Circuit Court Judge Kevin Cox (Case No. 18-007046).

28. Plaintiffs Blackwell and Jackson were found guilty. Both were sentenced to 78 months to 10 years.

**Plaintiffs appeal their convictions in the Michigan Court of Appeals
And learn of critical evidence withheld from them during their trial**

5

29. In December of 2019, during Plaintiffs' appeal to challenge their wrongful convictions, Plaintiffs' criminal defense attorneys' uncovered two pieces of critical exculpatory evidence to prove their innocence. Deliberately hidden from their clients were two body cam videos from Defendant Roe and Detroit police Sergeant Marlon Carter. In the Roe video taken after Roe met with Diamond Walton she is speaking with Defendant Doe, a white male police officer. In their conversation Doe tells Roe "not to put that shit in the report," a reference to what Doe had learned from Walton, to which she says, "I already deleted it."

30. In the second secreted body cam video Carter, in the company of Defendant Haidar, is speaking to a res gestae witness to the shooting who indicated to both Carter and Haidar the shooters were 4 in number and were driving a blue station wagon, not a black Kia, as was reported by Diamond Walton and Benson Harris.

31. Fully grasping the gravamen of the undisclosed videos on July 17, 2020, Wayne County Circuit Court Judge Tracy Green entered an Order to Vacate the convictions of Demetrius Blackwell Tyrese Jackson.

32. Although Plaintiffs have obtained their freedom, they will never regain the years stolen from them by the Defendant Officers. This lawsuit seeks redress for those injuries.

**BACKGROUND ALLEGATIONS IN THE
SHOOTING INCIDENT**

33.   Immediately after meeting at the hospital with Diamond Walton, P.O Kayla Roe's conversation with P.O. Lamont Nelson and P.O. Doe (unidentified, tall, white male with beard) was recorded on P.O. Roe's body cam.

34.   In that body cam video, P.O. John Doe recaps his conversation with Diamond Walton who identifies **only two individuals** --"Meech" (Demetrius Blackwell) and "Reese" (Tyrese Jackson) who shot at her vehicle.  **A third individual was not mentioned, just two.**

35.   P.O. Roe states on the video, "I made notifications already…so I have to…I mean about all the lies, yeah…she ended up telling the truth or whatever…." (Background male voice:  "yeah, just don't put that shit in there.") Roe: "Yeah, I'm gonna delete the whole report now.   Yeah, alright ….I thought you guys might get the truth out of her so I waited to submit it…"

36.   This Body Cam video was willfully withheld in order to the disadvantage Plaintiffs' at trial in their defense to the shooting case and of the defense during Plaintiff Williams's Probation Violation hearing.  Thus, Plaintiffs' criminal attorneys never had a chance to cross-examine P.O. Roe on what she deleted in her preliminary report or Defendant John Doe on his recorded statement.

37.   Yet another body cam video surfaced AFTER the hearings, which records an

officer interviewing two eyewitnesses immediately after the incident: a man named Johnny Stroud (who states he didn't see anything but heard what sounded like firecrackers) and a man named Nichols. On this body cam video, witness Nichols states [Diamond Walton's] car was a Chrysler 300 and then he states, "She pull off, as soon as she gets by the **station wagon**, them four get out the car and start shooting at her… **all four of them** had pistols, they went back in the car, went back in the alley…driving…just knew it was a **blue-type station wagon**….it was like they knew she was behind them…seem like bullet holes would have been in the back… they were cuttin' them loose." Then reiterates what P.O. says, **"four black men."**

38.   This *res gestae* witness, Mr. Nichols, was likewise kept secret from Plaintiffs' attorneys, and he is now deceased.

39.   The shooting attracted media, and considerable social media, attention; as a result there was substantial pressure on the Detroit Police Department to identify and catch any potential perpetrators.

40.   Sometime after P.O. Roe admittedly destroyed evidence of who and how many shooters there were, Defendants sought a third person for the crime. Willfully ignoring what Nichols, the res gestae witness reported to them, that the car the suspects drove was a blue station wagon and there were four shooters and

8

knowing well what had been told him by the victim, Haidar purported to claim Lavelle Williams was an additional third shooter.

41. Rather than continue to perform the police work necessary to properly identify whether any other individuals were involved, Defendant Officers instead conspired among themselves to fabricate facts in support of obtaining arrest warrants for the Plaintiffs. Specifically, the Defendant Officers unjustly singled out the Plaintiffs and then affirmatively endeavored to stretch and manipulate the facts and the evidence to fit the false hypothesis that they were guilty of the crime. Further, in retribution for the numerous complaints the Blackwells made against them and the continued terror wreaked upon them, Defendants, fabricated evidence of both Blackwell's and Jackson's involvement in the shooting.

42. Further proof in support of this conspiracy and fabrication of evidence against the Plaintiffs, is that the car in which the victims were driving when they were shot at was a wanted stolen vehicle. Although the so called victims were felons in a stolen car, no charges were brought against them. Further, at the time of the shooting, Benson Harris was a convicted felon on probation and although the same was known to the Defendants, he was never arrested for any violation. "Ken," the third person the victims' car, was never identified and fled from the scene.

43. In that regard, the Defendant Officers manufactured "evidence" that falsely

implicated the Plaintiffs.  This fabrication of evidence included, but was not limited to, unlawfully manipulating witnesses to falsely implicate Plaintiffs by means of improper suggestiveness, which violated Plaintiffs' constitutional rights.

44. For example, Defendant Officers, through improper suggestiveness and other unconstitutional tactics, manipulated a "six pack" of photos to try to create a false inference that Lavelle was involved in the shooting along with Meech and Reese.

45. In addition to the foregoing misconduct, the Defendant Officers also disregarded and/or destroyed exculpatory evidence, to wit, police reports, notes, and statements that should have been preserved along with the rest of the Detroit Police Department, but were not.

46. The Defendant Officers also deliberately and affirmatively failed to Investigate and develop information which would have helped to establish the guilt of individuals other than Plaintiffs.  Consistent with this endeavor, Defendant Officers unlawfully suppressed information would have implicated others and thereby exonerated Blackwell and Jackson.

47. The Defendants also withheld from Plaintiffs and the prosecutors, evidence that was both exculpatory and material. This unconstitutional conduct included, but was not limited to, withholding knowledge of an eyewitness that would have helped to exonerate Plaintiffs, and withholding a body cam video that admits to spoliation of evidence by Officer Roe.

48. At trial, when questioned about a canvassing the neighborhood for witnesses, Officer in Charge Alejandro Vela states:

> Q: Did any of them provide information to you, regarding whether or not they, uhm, seen or heard anything that happened on Prairie and Florence Street that day?
>
> A: No they did not.
>
> (Trial Tr., p. 110)

49. This is false testimony as the video clearly shows Nichols was an eyewitness.

50. Judge Cox based his sentencing on this false testimony and the jury in Blackwell and Jackson was grievously, mislead.

51. Because of the prosecution's failure to produce the res gestae witness, Judge Cox failed to infer that this witness's testimony would have been unfavorable to the prosecution's case pursuant to M Crim JI 5.12/MCL 767.40.

52. Judge Cox did not hear the defense cross-examining of the detectives' failure to ever talk to the only disinterested witness.

53. Plaintiffs stood trial on nine weapons charges in the 2018 accused of crimes they did not commit. As a proximate result of Defendants' misconduct described above, Plaintiffs were wrongfully found guilty of crimes they did not commit.

54. But for Defendants' above-described misconduct, Plaintiffs would have been neither prosecuted nor convicted.

55. Blackwell and Jackson were friends since children. Both were on a course for self- improvement and positive direction.

56. Because of Defendants' illegal and unconstitutional conduct, Defendants improperly caused Plaintiffs to be removed from their family, and were abruptly thrust instead into the Michigan Prison System to fend for themselves as teenagers in a prison full of dangerous, fully grown men.

57. Plaintiffs were deprived of liberty and the pleasures of basic human experience for months and years of their young lives, and such confinement exacerbated pre-existing mental health struggles and emotional well-being of them all.

58. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages including, but not limited to:

    a. Economic damages, past and future;

    b. Pain and suffering, physical injury;

    c. Loss of society and companionship;

    d. Fear, anxiety, humiliation, and shame;

    e. Serious emotional distress; and

    f. Cost of past and future medical.

## COUNT I

## <u>42 U.S.C. 1983 & 1985 AGAINST INDIVIDUAL POLICE DEFENDANTS</u>

Plaintiff hereby re-alleges and incorporates herein by reference all the prior paragraphs, as though the same were fully set forth herein word for word.

59. The Individual Defendants' actions were done in their individual capacities and under color of state law

60. The Individual Defendants' actions violated clearly established rights of the Plaintiff including, but not limited to:

   a. The right to be free from retaliation for protected speech (1st and 14th Amendment);

   b. The right to be free from wrongful arrest and wrongful imprisonment, and use of excessive force (4th and 14th Amendment);

   c. The right to be free from malicious prosecution (4th and 14th Amendment);

   d. The right to be free from Brady violations (14th Amendment)

61. As a direct and proximate result of the Individual Defendants' actions, Plaintiff suffered injury and damages including, but not limited to those set forth in paragraph 76.

**WHEREFORE**, Plaintiff claims judgment against Individual Defendants in the amount more than Twenty-Five Thousand Dollars ($25,000) which is fair and just and consistent with the law and evidence as shall be determined, together with

interest, costs and attorney's fees, and all other damages, including exemplary and/or punitive damages allowable by law.

## COUNT II
## MUNICIPAL LIABILITY AGAINST DEFENDANT
## CITY OF DETROITUNDER 42 USC 1983

62. Plaintiff hereby re-alleges and incorporates herein by reference all the prior paragraphs, as though the same were fully set forth herein word for word.

63. At all times herein, Defendant City of Detroit with deliberate indifference to the constitutional rights of the Plaintiff and other similarly situated individuals, established, promulgated, implemented, and maintained the following customs, policies, or practices that were a proximate cause and a moving force in violations of the Plaintiff's rights under the United States Constitution:

    a. Failing to adequately train, supervise, and/or discipline law enforcement officers and supervisors with regard to retaliating for exercise of protected 1st Amendment rights, for Brady violations and with regard to the appropriate and necessary bases for use of force, arrest and prosecution;

    b. Hiring and/or retaining as law enforcement officers, supervisors, and certain persons whom the Defendant City of Detroit knew or had actual notice of retaliating for exercise of protected 1st Amendment rights, using excessive force, arresting without probable cause, committing Brady violations, and prosecuting individuals without probable cause;

    c. Failing to intervene when it knew of retaliation, improper excessive force, wrongful arrest, Brady violations and continuation of prosecution of individuals without probable cause;

    d. Condoning and actively encouraging the use of processes that failed to properly monitor, evaluate and determine the continuing retaliation,

arrest without probable cause, improper use of force, Brady violations, and prosecution of individuals without probable cause;

e. Routinely pursuing and continuing prosecutions when it was known they lacked probable cause, and they committed Brady violations;

f. Routinely concealing, covering up, and hiding evidence of wrongdoing by law enforcement officers employed by the Defendant City of Detroit;

64. Each of the customs, policies, or practices was known to Defendant City of Detroit as highly likely and probable to cause violations of the United States constitutional rights of Plaintiff and other individuals subject to continued prosecution without probable cause, and each was a moving force in the violations of the Plaintiff's United States constitutional rights, as set forth herein.

65. As a direct and proximate result of Defendants' actions, Plaintiff suffered injury and damages including those set forth in paragraph 76.

**WHEREFORE**, Plaintiff claims judgment against Defendant City of Detroit in the amount more than Twenty-Five Thousand Dollars ($25,000) which is fair and just and consistent with the law and evidence as shall be determined, together with interest, costs and attorney's fees, and all other damages, including exemplary and/or punitive damages allowable by law.

## COUNT III
## BRADY VIOLATION PURSUANT TO 14TH AMENDMENT

Plaintiffs hereby re-allege and incorporate herein by reference all of the

Paragraphs, as though the same were fully set forth herein word for word.

66. Defendant was a member of the prosecution team for purposes of the *Brady v Maryland* rule.

67. Defendant deliberately withheld exculpatory information which he had a Duty to provide to Plaintiff and duty to disclose to the prosecutor and the Magistrate.

68. Defendant, deliberately and consciously chose to deny the relevant participants this exculpatory information as alleged above.

69. In so doing Plaintiff was deprived of his due-process in the underlying criminal case which was brought against him without probable cause.

70. As a direct and proximate result of the Individual officers' actions, Plaintiffs suffered injury and damages including those set forth in paragraph 76.

**WHEREFORE**, Plaintiffs claim judgment against Individual Police Defendants in the amount in excess of Twenty-five Thousand Dollars ($75,000) which is fair and just and consistent with the law and evidence as shall be determined, together with interest, costs and attorney's fees, and all other damages.

## COUNT IV

## MALICIOUS PROSECUTION UNDER 42 USC 1983

71. Plaintiffs hereby re-allege and incorporate herein by reference all of the Paragraphs, as though the same were fully set forth herein word for word.

72. The Individual Police Officers' actions were done in their individual capacities, and under color of state law.

73. The Individual Police Officers' actions violated clearly established rights of the Plaintiff including but not limited to:

    a. The right to be free from malicious prosecution of person and property, (4th Amendment);

    b. The right to be free from retaliation for protected speech (1st Amendment);

    c. The right to be free from Brady violations (14th Amendment);

    d. The right to procedural and substantive due process and fair treatment during prosecution (4th, 5th and 14th Amendments);

74. As a direct and proximate result of the Individual officers' actions, Plaintiffs suffered injury and damages including those set forth in paragraph 76.

75. Defendants pursued and continued prosecution of Plaintiffs when they Knew the prosecution lacked probable cause, and was based on Brady violations, false and fraudulent information provided by Defendants, willfully and wantonly, and with deliberate indifference.

**WHEREFORE**, Plaintiff claims judgment against Defendant City of Detroit in the amount more than Twenty-Five Thousand Dollars ($25,000) which is fair and just and consistent with the law and evidence as shall be determined,

17

together with interest, costs and attorney's fees, and all other damages, including exemplary and/or punitive damages allowable by law.

### JURY DEMAND

NOW COMES the Plaintiff requests a trial by jury in this matter.

Respectfully submitted,

s/David A. Robinson
David A. Robinson (P 38754)
Thomas E. Kuhn (P37924)
Brandon McNeal (P81300)
Attorneys for Plaintiff
28145 Greenfield Rd., Ste. 100
Southfield, MI 48076
(248) 423-7234

Dated:  7/7/2021                                            davidrobinsonlaw@gmail.com