UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEMETRIUS BLACKWELL-ESTERS et al., <br><br> Plaintiffs, <br><br> v. <br><br> KAYLA ROE et al., <br><br> Defendants. | Case No. 21-11586 <br> Honorable Shalina D. Kumar <br> Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 97)**

Plaintiffs Demetrius Blackwell-Esters and Tyrese Jackson sued the City of Detroit, as well as defendant police officers Kalya Roe, Matthew Miller, Alejandro Vela, Ahmed Haidar, and several other Detroit police officers ("Individual Defendants")[1] under 42 U.S.C. §§ 1983 and 1985 for alleged violations of plaintiffs' constitutional rights in connection with a shooting and a subsequent criminal prosecution. ECF No. 1. Defendants move for summary judgment on all claims. ECF No. 97. The parties fully briefed the motion, and the Court heard oral argument on February 12,

---

[1] These officers are Lamont Nelson, J. Reynoso, D. Kline, B. Atkinson, J. Sayles, A. Williams, R. Dyas, D. Cross, Brent Shur. ECF No. 1.

2024. ECF Nos. 97, 99, 101. For the reasons below, the Court grants in part and denies in part defendants' motion.

I.   **Background**

This action stems from an underlying criminal case involving a 2018 shooting. On August 7, 2018, Diamond Walton was sitting in her car waiting for her boyfriend, Benson Harris-Lindsey, when she observed two individuals aim guns at her as they drove by in a black Kia. ECF No. 97-2, PageID.5744-51, 5754-55. After Harris-Lindsey entered Walton's car and Walton started driving, gunfire struck the car. *Id.* at PageID.5758-63.

During the gunfire, Walton and Harris-Lindsey saw three individuals, whom they later identified as Blackwell-Esters, Jackson, and Lavelle Williams,[2] standing outside the same black Kia shooting at them. *Id.* at PageID.5769; ECF No. 97-3, PageID.5777-78, 5784. A bullet struck Walton's leg before Walton managed to drive away. ECF No. 97-2, PageID.5769; ECF No. 97-3, PageID.5787-88. Walton and Harris-Lindsey then went to a nearby hospital, where Walton received medical care for her bullet wound. ECF No. 97-3, PageID.5790-91.

---

[2] Williams separately sued defendants in a companion case to this action. *See* Case No. 21-11578, ECF No. 1.

When Detroit police officers arrived at the scene, they found Walton's car with bullet holes on the driver's side. ECF No. 97-5, 05:30-08:48. On a street nearby, they found 17 spent bullet casings from three different firearms. ECF No. 97-6, PageID.5806. Officer Marlon Carter's bodycam footage shows that while canvassing the area, Carter and another officer spoke with Dennis Nichols, who claimed to have witnessed the shooting. ECF No. 97-7, 01:56-02:38. The footage shows defendant Haidar was initially present but left before Nichols described what he saw. *Id.*

Nichols stated that he saw four Black men, armed with pistols, exit a "station wagon" and start shooting at a woman in a Chrysler 300. *Id.*, 02:20-03:13, 04:30-04:40. Nichols stated that based on the position of the vehicles at the time of the shooting, he believed that all of the bullet holes should be in the back of the vehicle. *Id.*, 03:50-04:10. Nichols said that the shooters got back into the station wagon and fled through an alley. *Id.*, 02:50-03:05. Carter's bodycam footage contains the only record of Nichols' description of the shooting.

Later that day, defendant Roe interviewed Walton at the hospital. ECF No. 97-9, PageID.5816. Walton recounted the shooting and told Roe that she did not know who the shooters were. *Id.* at PageID.5818-20. Roe wrote a report detailing the interview with Walton but did not submit it. *Id.*

Defendant Miller and other officers later arrived at the hospital and interviewed Walton again. *Id.* at PageID.5819, 5821. During this subsequent interview, Walton identified Blackwell-Esters and Jackson by their street names. ECF No. 97-9, PageID.5819-20. Roe's bodycam footage transcript shows that after this subsequent interview, Miller told Roe not to put her initial interview with Walton in her report and Roe replied, "I'm gonna delete the whole report right now." ECF No. 99-12, PageID.7984. Roe testified that she submitted a revised report instead indicating that Walton identified two shooters. ECF No. 97-9, PageID.5819-20. Walton's initial statement that she could not identify the shooters does not appear in any record other than Roe's bodycam.

The officers also interviewed Harris-Lindsey, who identified Blackwell-Esters, Jackson, and a "third person" as the shooters. ECF No. 97-3, PageID.5792. Walton and Harris-Lindsey separately identified Blackwell-Esters and Jackson as the shooters when shown a photo of each. ECF No. 97-10. And after the hospital released Walton, she and Harris-Lindsey separately identified Lavelle Williams as the third shooter out of a pair of six pack photo-lineups. ECF No. 97-11.

As the officer in charge of the investigation, defendant Vela prepared and presented warrant requests for the arrest of plaintiffs to the Wayne

County prosecutor. ECF No. 97-15. On August 9, 2018, officers arrested Blackwell-Esters and Jackson at a residence where they found several weapons, including a rifle later tied to the shooting. ECF No. 97-13, PageID.5844-57. According to Blackwell-Esters, Haidar personally arrested him and at a later unspecified time mentioned Blackwell-Esters' previous citizen complaints against Haidar. ECF Nos. 99-7, 99-14. On August 21, 2018, officers arrested Lavelle Williams on an out-of-custody warrant. ECF No. 97-14, PageID.5860. Blackwell-Esters, Jackson and Williams were jointly charged with two counts of assault with intent to murder and multiple felony firearms offenses. ECF No. 97-17.

    The parties dispute whether defendants turned over Carter's and Roe's bodycam footage to the prosecutor for pre-trial disclosure to plaintiffs. Defendant Vela testified that he provided the prosecutor with Carter's and Roe's bodycam footage, as well as everything else obtained as part of the investigation. ECF No. 97-18, PageID.5997. Discovery emails and testimony from Blackwell-Esters' defense attorney confirm that the prosecutor possessed Carter's bodycam footage, which plaintiffs' defense attorneys had the chance to review weeks before the trial started. ECF No. 97-19; ECF No. 99-10, PageID.7930, 7933; ECF No. 97-36, PageID.6220. However, the prosecutor's office later admitted that its files did not contain

Roe's bodycam footage, ECF No. 99-10, PageID.7929, and plaintiffs' defense counsel each testified that before trial, they never actually received or were aware of Roe's bodycam footage and the initial interview with Walton. *Id.* at PageID.7930, 7934; ECF No. 97-31, PageID.6191, 6193.

At trial, Blackwell-Esters and Jackson were convicted of two counts of assault with intent to do great bodily harm and several felony firearm charges. ECF No. 97-17. Williams defended on grounds that he was "merely present" during the shooting and was acquitted on all charges. ECF No. 97-20, PageID.6005. However, the court found by a preponderance of the evidence that he had violated the terms of his probation related to a prior arson conviction and thus sentenced Williams to 6.5-10 years' imprisonment. ECF No. 97-21, PageID.6015; ECF No. 97-22, PageID.6024-25. Plaintiffs' defense attorneys aver that had they possessed Carter's and Roe's bodycam footage, they would have impeached Walton based on her identification of plaintiffs. *See* ECF No. 99-10, PageID.7934; ECF Nos. 99-15, 99-16.

After the prosecutor stipulated to vacate plaintiffs' convictions, plaintiffs brought this action, asserting under 42 U.S.C. §§ 1983 and 1985 First, Fourth, Fifth and Fourteenth Amendment claims against Individual Defendants based on the alleged suppression of exculpatory evidence and

fabrication of evidence and a claim for municipal liability against the City of Detroit. ECF No. 1. After defendants moved for summary judgment and plaintiffs stipulated to dismiss nearly all claims in response, *see* ECF Nos. 30, 97, 99, the only remaining claims are § 1983 claims alleging that Roe, Miller, and Vela violated plaintiffs' Fourteenth Amendment due process rights by withholding exculpatory evidence and that Haidar violated Blackwell-Esters' First Amendment rights by arresting Blackwell-Esters in retaliation for filing citizen complaints.

**II.     Standard of Review**

Summary judgment is appropriate where the evidence in the record, viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A party asserting either that "a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. Pro. 56(c)(1).

In reviewing a motion for summary judgment, the court must "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation

omitted). Further, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The ultimate question for the court to determine "is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

The moving party bears the initial burden of "informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citation omitted). If the moving party carries its burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A non-moving party has not made that sort of showing if "the record taken as a whole could not lead a rational trier of fact to find" in the party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted).

The court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*,

886 F.2d 1472, 1479-80 (6th Cir. 1989). Indeed, "it is not for the court to search the record and construct arguments. Parties must do that for themselves." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (declining to consider party's arguments when it left "it to the court to seek out the relevant law, identify the relevant evidence, and develop their argument for them"); see also, e.g., *Lyngaas v. Curaden* AG, 2021 WL 6049428, at *3 (E.D. Mich. Dec. 21, 2021) ("Where a party fails to explain an argument and supply authority . . . a court need not attempt to supply the missing information."). Accordingly, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) (quotations and alterations omitted).

### III.     Analysis

Defendants move for summary judgment on these claims based on qualified immunity. "Qualified immunity is an affirmative defense that protects government officials from liability 'when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)). Officers are entitled to qualified immunity "unless (1) they

violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Defendants argue only the first prong—whether they in fact violated plaintiffs' constitutional rights—and develop no argument as to whether the asserted rights were clearly established. Because defendants offer no argument as to the second prong of the qualified immunity analysis, they forfeit the issue. *See Alston v. City of Detroit Police Officers*, 717 F. Supp. 3d 618, 629 (E.D. Mich. 2024) (holding same where officers challenged only the factual bases of plaintiffs' claims); *Evans v. Vinson*, 427 F. App'x 437, 447 (6th Cir. 2011) (holding defendants waived arguments as to "clearly established" prong where defendants' qualified immunity argument was a "one-and-a-half page statement of the law with no attempt at argument, and . . . cit[ation] [to] only the first prong of the test"). Accordingly, the Court analyzes only whether the evidence, when viewed in the light most favorable to plaintiffs, show that defendants violated plaintiffs' constitutional rights.

### A.   *Brady* Violations

"In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Jackson v. City of Cleveland*, 925 F.3d 793, 813-14 (6th Cir. 2019). To establish a *Brady* claim, a plaintiff must show that "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Id.* at 814. The parties dispute only the second element—whether officers Roe, Miller, and Vela suppressed any evidence.

Police officers violate their duties under *Brady* "when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information" to the prosecutor. *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009). Although officers have a "*Brady*-derived responsibility to turn over potentially exculpatory evidence to the prosecutor's office," "this disclosure obligation is limited: *Brady* requires a police officer to disclose evidence to the prosecutor only when its exculpatory value is apparent to the officer, that is, when the officer is aware that the evidence

could form a basis for exonerating the defendant." *D'Ambrosio v. Marino*, 747 F.3d 378, 389-90 (6th Cir. 2014) (cleaned up).

Here, the evidence shows that Roe, Miller, and Vela suppressed material exculpatory evidence. Roe's bodycam footage transcript shows that she deleted a report indicating that Diamond Walton, one of the victims of the shooting, could not identify the shooters. *See* ECF No. 99-12, PageID.7984. The transcript shows that Miller directed Roe to delete this report because Walton later identified the shooters, *see id.*, and Miller did not disclose Walton's prior inconsistent statement to the prosecutor—as defendants admit, the only officer that disclosed any evidence to the prosecutor was Vela. ECF No. 97, PageID.5731. Vela testified that he received and reviewed Roe's bodycam footage and turned over all the evidence for the case to the prosecutor, ECF No. 99-4, PageID.7834, 7839. Despite this, the prosecutor's file shows that Vela's disclosures did not reveal Walton's prior inconsistent statement or include Roe's bodycam footage, which is the only record of Walton's statement.[3] ECF No. 99-10,

---

[3] Plaintiffs also claim that Vela violated his duties under *Brady* by withholding Carter's bodycam footage, which provided the only record of an inconsistent description of the shooting. However, uncontroverted evidence shows that Vela did in fact turn over Carter's bodycam footage to the prosecutor. ECF No. 97-18, PageID.5995-97; *see* ECF No. 97-32, PageID.6204; ECF No. 99-10, PageID.7929-32. As a result, Vela met his obligation under *Brady* to disclose this evidence to the prosecutor. *See*

PageID.7929. Viewing this evidence in the light most favorable for plaintiffs, Vela, like Roe and Miller, withheld evidence of Walton's prior inconsistent statement from the prosecutor.

The parties do not dispute that Walton's prior inconsistent statement was material and exculpatory. And the facts that Miller directed Roe to delete Walton's statement and Roe deleted an entire report to erase Walton's statement shows the statement's obvious exculpatory value. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (suggesting that exculpatory value is apparent when "the police themselves by their conduct indicate that the evidence could form a basis for exonerat[ion]"). Because the evidence shows that Roe, Miller, and Vela suppressed material exculpatory evidence in violation of plaintiffs' rights under *Brady*, the Court finds that defendants are not entitled to summary judgment on plaintiffs' *Brady* claims.

### B. First Amendment Retaliation

To establish a First Amendment retaliation claim, a plaintiff must prove "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary

---

*D'Ambrosio*, 747 F.3d at 389. The Court thus grants summary judgment in defendants' favor on plaintiffs' *Brady* claim against Vela based on withholding the bodycam footage of a witness's description of the shooters.

firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011). Where, as here, the plaintiff alleges a retaliatory arrest, the plaintiff "'must plead and prove the absence of probable cause for the arrest' to sustain a First Amendment retaliation claim." *Wood v. Eubanks*, 25 F.4th 414, 428 n.4 (6th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)).

Here, nothing suggests that Blackwell-Esters' arrest lacked probable cause. It is undisputed that Vela was the officer in charge of the investigation and prepared the warrant request for Blackwell-Esters' arrest after Walton and Harris-Lindsey separately identified Blackwell-Esters as one of the shooters through interviews and photo identification. *See* ECF Nos. 97-10, 97-11, 97-15. Even if, as plaintiffs note, Haidar "mentioned" Blackwell-Esters' citizen complaints against him at an unspecified time after the arrest, ECF No. 99, PageID.7798, the reference to those complaints does nothing to negate the probable cause supporting the arrest. Because there is no evidence suggesting that Blackwell-Esters' arrest lacked probable cause, defendants are entitled to summary judgment in their favor on this claim.

## IV.  Conclusion

For the reasons above, defendants' motion for summary judgment (ECF No. 97) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the motion to the extent that it **DISMISSES** all claims against defendants except for plaintiffs' § 1983 *Brady* claim against defendants Roe, Miller, and Vela based on the alleged suppression of Diamond Walton's statement. The Court **DENIES** the motion as to the § 1983 *Brady* claim against Roe, Miller, and Vela based on the alleged suppression of Diamond Walton's statement.

Dated: March 14, 2025

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge